**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

PERRY F. ALAMA

       Debtor

Case No. 12-34569

JOHN WALKER AND LISA WALKER

       Plaintiffs

v.

PERRY F. ALAMA

       Defendant

Adv. Proc. No. 13-3026

### M E M O R A N D U M

**APPEARANCES**:   DONALD N. JACOBSON, P.A.
          Donald N. Jacobson, Esq.
          Post Office Box 1425
          West Palm Beach, Florida 33402
          Attorney for Plaintiffs

                 CATHERINE B. SANDIFER, ESQ.
          320 Wears Valley Road
          Pigeon Forge, Tennessee 37863
          Attorney for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Adversary Complaint filed by the Plaintiffs on February 19, 2013, asking the court to determine that a Judgment in the amount of $773,442.83 entered against the Defendant on May 6, 2004, is nondischargeable under 11 U.S.C. § 523(a)(6) (2006). The trial was held on October 21, 2013. The record consists of ten exhibits introduced into evidence, ten exhibits stipulated into evidence, and the testimony of four witnesses, Michelle Alama, the Plaintiffs, and the Defendant. Because the parties did not, as directed in the pretrial Order entered by the court on June 13, 2013, jointly pre-mark their trial exhibits, all exhibits submitted by the Plaintiffs are referred to with letters and those submitted by the Defendant are referred to with numbers.[1]

This is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (2006).

I

On September 21, 1992, while working in Antigua, the Plaintiff, John Walker, and the Defendant were involved in an automobile accident. On April 6, 1994, the Plaintiffs filed a complaint against the Defendant in the Circuit Court for Broward County, Florida, which was subsequently dismissed without prejudice for failure to prosecute on November 12, 1997. *See* TRIAL EX. A. The Plaintiffs filed a second lawsuit against the Defendant in Broward County on December 17, 1997, which was dismissed by an order entered on September 28, 1998, as amended

---

[1] Additionally, the pretrial Order directed that the parties file stipulations of undisputed facts by October 14, 2013. However, rather than file joint stipulations, the Defendant, on October 14, 2013, filed the Defendant's Proposed Stipulations of Facts containing twenty-one proposed stipulations of fact while the Plaintiffs, on October 15, 2013, filed the Plaintiffs' Proposed Stipulations of Facts containing twenty proposed stipulations of fact. Because all but three of the proposed stipulations on each list were substantially identical, the court deemed items 1 through 11 and 14 through 21 of the Defendant's Proposed Stipulations and items 1 through 11 and 13 through 20 of the Plaintiffs' Proposed Stipulations as joint stipulations of undisputed facts not subject to further proof.

on October 26, 1998. *See* TRIAL EX. B. The Plaintiffs filed a third lawsuit against the Defendant on September 18, 1998, in Antigua. A trial was held in Antigua on October 27 and 28, 2003, and a judgment in the amount of $773,442.83 was entered against the Defendant on May 6, 2004 (Judgment). TRIAL EX. C. The Plaintiffs recorded the Judgment in the Register of Deeds Office for Broward County, Florida, on March 8, 2005, and on July 27, 2006, filed a complaint in the Broward County, Florida, Circuit Court to domesticate the Judgment. On December 15, 2009, the Broward County, Florida, Circuit Court entered an Order Granting Enforcement of Foreign Judgment recognizing the Judgment under the laws of the State of Florida and held that it was enforceable against the Defendant. TRIAL EX. J.

On September 24, 2004, the Plaintiff and his non-debtor spouse, Michelle Alama, purchased investment real property located at 2466 Bryan Road, Sevierville, Tennessee (Bryan Road Property), which they subsequently sold for $139,402.37 on November 18, 2005, and split the proceeds equally between them. TRIAL EX. 1; TRIAL EX. 2. On November 3, 2005, Ms. Alama executed a Purchase & Sale Agreement for the purchase of residential real property located at 3228 Topside Drive, Kodak, Tennessee (Topside Drive Property), which she purchased on November 18, 2005, using her portion of the proceeds received from the sale of the Bryan Road Property as the down payment. TRIAL EX. 4; TRIAL EX. 5; TRIAL EX. 6. On December 20, 2005, Ms. Alama, for the purpose of making her daughter a co-owner of the Topside Drive Property, executed a Quit Claim Deed to herself and her daughter, Crystal Alama. TRIAL EX. 7. The Defendant joined in the execution of the Quit Claim Deed for the purpose of conveying any spousal interest he might have held in the Topside Drive Property to Ms. Alama and their daughter. TRIAL EX. 7. Thereafter, the Alamas sold their

residence at 4107 NW 15th Avenue, Oakland Park, Florida (Florida Property), on May 4, 2006, for $218,632.33. TRIAL EX. 8; *see also* TRIAL EX. H; TRIAL EX. 9.

The Defendant filed his Chapter 7 bankruptcy case on November 12, 2012, and received a discharge of his debts on March 8, 2013. The Plaintiffs timely filed this adversary proceeding on February 18, 2013. As stated in the pretrial Order entered on June 13, 2013, the issue before the court is whether the Judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

## II

Determination of nondischargeability is governed by subsection (6) of 11 U.S.C. § 523(a), which provides that "[a] discharge under section 727,[2] . . . of this title does not discharge an individual debtor from any debt — for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The burden of proving, by a preponderance of the evidence, each element necessary for a determination of nondischargeability is borne by the Plaintiffs, against whom the court construes § 523(a) strictly, while construing it liberally in favor of the Defendant. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L.Ed.2d 755 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). In order to prevail under § 523(a)(6), the Plaintiffs must prove the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury[,]" *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L.Ed.2d 90 (1998), and that the

---

[2] Chapter 7 debtors receive a discharge of prepetition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C. § 727(b) (2006). This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge. *Buckeye Ret. Co., LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (citations omitted).

4

Defendant desired to cause the consequences of his actions or believed with reasonable certainty that those consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "That a reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient. Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10). Additionally, "the injury must invade the creditor's legal rights." *Steiner v. Best (In re Best)*, 109 Fed. Appx. 1, 6 (6th Cir. 2004). Accordingly, based upon Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted); *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) ("[T]he bankruptcy courts in this circuit, in order to find a 'willful' injury under § 523(a)(6) must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act.").

"Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007), requiring the court to "look into the debtor's mind subjectively" in order to determine whether the debtor intended to

5

cause the consequences of his act or believed that the consequences were substantially certain to result from his act[.]" *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). On the other hand, "[a]n act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse' . . . [and does] 'not require ill-will or specific intent to do harm.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986)). "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. [K]nowledge that legal rights are being violated is insufficient to establish malice . . . .'" *Best*, 109 Fed. Appx. at 6 (quoting *In re Mulder*, 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004)). In other words, "[l]ack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *Lupo*, 353 B.R. at 550. Nondischargeability under § 523(a)(6) requires proof that the Plaintiffs were injured and the Defendant's deliberate or intentional actions caused its injury; however, "[m]ere negligence is not sufficient to except a debt from discharge under § 523(a)(6)." *Fox*, 370 B.R. at 119. Examples of types of misconduct that the Sixth Circuit has recognized as satisfying the willful and malicious injury standard include, but are not limited to, "intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises." *Musilli v. Droomers (In re Musilli)*, 379 Fed. Appx. 494, 498 (6th Cir. 2010) (adding contempt as another example of potentially willful and malicious injury) (citing *Best*, 109 Fed. Appx. 1, 5 & n.2); *see also Geiger*, 523 U.S. at 61, 118 S. Ct. at 977 ("[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts.").

As an initial matter, the Judgment itself, which was grounded on negligence, is not based upon any malicious and willful injury to the Plaintiffs. The fact that the Alamas sold the Bryan Road Property, their Florida Property, or that Ms. Alama purchased the Topside Drive Property and later transferred it to herself and her daughter do not satisfy the requirements of § 523(a)(6) because these actions occurred independent of the basis for the Judgment and occurred after the Judgment was entered. Nevertheless, it is well settled that acts of conversion may serve the basis for a determination of nondischargeability under § 523(a)(6), thus, the court could make a determination of nondischargeability if the Plaintiffs can prove that the Defendant's transfer of real property constituted conversion of property in which the Plaintiffs held an interest.

Under Tennessee law, conversion "is the appropriation of tangible property to a party's own use and benefit in exclusion of defiance of the owner's rights." *Thompson v. Thompson*, 2009 WL 637289, at *14, 2009 Tenn. App. LEXIS 99, at *45 (Tenn. Ct. App. Mar. 12, 2009); *see also Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (defining conversion as an intentional tort requiring proof that a party appropriated another's property for his own use by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property). "The main focus of the tort is the interference with an owner's property right[ and t]he degree of this interference, as well as the impact on the property, determines whether there has been a conversion." *Gen. Elec. Credit Corp. v. Kelly & Dearing Aviation*, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988). "[W]hile they do appreciably overlap, liability for conversion does not automatically equate with the existence of a nondischargeable debt under § 523(a)(6)." *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 441 (Bankr. N.D.

Ohio 2004).  Whether an act of conversion constitutes a willful and malicious injury within the scope of § 523(a)(6) depends upon whether the party intended to cause the harm or was substantially certain that such harm would occur.  *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

To sustain an action for conversion, however, the Plaintiffs must prove that they had a property interest in the real properties that the Defendant sold.  With respect to the two Tennessee properties, the Bryan Road Property and the Topside Drive Property, the record is clear that the Plaintiffs held no interest.  The Bryan Road Property, which the Alamas owned jointly, was purchased in September 2004 and sold in November 2005.  At that time, the Plaintiffs had obtained the Judgment against the Defendant; however, it had not then, or has it ever, been granted comity by the State of Tennessee under either Tennessee Code Annotated § 26-6-104, whereby judgments issued by "a court of the United States or . . . any other court which is entitled to full faith and credit in this state" are enforceable so long as the procedures contained therein are followed, or by § 26-6-107 which states that the rights of judgment creditors "to bring an action to enforce the creditor's judgment instead of proceeding under [the Uniform Enforcement of Foreign Judgments Act] remains unimpaired."  *See Barone v. Barone*, 2012 WL 1116320, at *4, 2012 Tenn. App. LEXIS 218, at *11-14 (Tenn. Ct. App. Apr. 3, 2012) (also noting that "there is a split of authority nationally regarding whether the Uniform Enforcement of Foreign Judgments Act applies to a decree from a foreign country because full faith and credit is not involved[,]" although Tennessee courts have not resolved the issue within this state).  There is no dispute that the Judgment was never filed with any court in the State of Tennessee or recorded with the Sevier County Register of Deeds. Because the Judgment was not entitled to enforceability under the laws of the State of Tennessee and

the Plaintiffs had no property or lien interests in any real or personal property held by the Defendant in the State of Tennessee, there could have been no conversion by the sale of the Bryan Road Property. With respect to the Topside Drive Property, the Defendant never held any ownership interest and he subsequently signed away any potential spousal interest he might have subsequently held in that property. Accordingly, the Topside Drive Property is held 100% by Ms. Alama and her daughter, and the Plaintiffs could not satisfy their Judgment against the Defendant through it even if they did hold a property interest in any real property held by the Defendant within the State of Tennessee.[3]

With respect to the Florida Property, in order to prove that the sale constituted a conversion for the purposes of § 523(a)(6), the Plaintiffs must prove that, as in Tennessee, they were entitled to enforce the Judgment within the State of Florida and that the Defendant willfully and maliciously converted property within which they held an interest. Under Florida law,

> Except as provided in [§] 55.605 [outlining grounds for nonrecognition], an out-of-country foreign judgment meeting the requirements of [§] 55.603 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. Procedures for recognition and enforceability of an out-of-country foreign judgment shall be as follows:
>
> > (1) The out-of-country foreign judgment shall be filed with the clerk of the court and recorded in the public records in the county or counties where enforcement is sought.
> >
> > > (a) At the time of the recording of an out-of-country foreign judgment, the judgment creditor shall make and record with the clerk of the circuit court an affidavit setting forth the name, social security

---

[3] It was insinuated at trial that Ms. Alama could not own real property individually because she and the Defendant are legally married. This is a false assertion under Tennessee law. Furthermore, the record reflects that the Alamas were separated and not living together from May 2006, when Ms. Alama and her children moved to Tennessee while the Defendant remained in Florida, until 2010, when the Defendant moved to Tennessee and began residing with Ms. Alama at the Topside Drive Property.

9

> number, if known, and last known post-office address of the judgment debtor and of the judgment creditor.
>
> (b) Promptly upon the recording of the out-of-country foreign judgment and the affidavit, the clerk shall mail notice of the recording of the out-of-country foreign judgment, by registered mail with return receipt requested, to the judgment debtor at the address given in the affidavit and shall make a note of the mailing in the docket. The notice shall include the name and address of the judgment creditor and of the judgment creditor's attorney, if any, in this state. In addition, the judgment creditor may mail a notice of the recording of the judgment to the judgment debtor and may record proof of mailing with the clerk. The failure of the clerk to mail notice of recording will not affect the enforcement proceedings if proof of mailing by the judgment creditor has been recorded.

(2) The judgment debtor shall have 30 days after service of the notice to file a notice of objection with the clerk of the court specifying the grounds for nonrecognition or nonenforceability under this act.

(3) Upon the application of any party, and after proper notice, the circuit court shall have jurisdiction to conduct a hearing, determine the issues, and enter an appropriate order granting or denying recognition in accordance with the terms of this act.

(4) If the judgment debtor fails to file a notice of objection within the required time, the clerk of the court shall record a certificate stating that no objection has been filed.

(5) Upon entry of an order recognizing the out-of-country foreign judgment, or upon recording of the clerk's certificate set forth above, the out-of-country foreign judgment shall be enforced in the same manner as the judgment of a court of this state.

(6) Once an order recognizing the out-of-country foreign judgment has been entered by a court of this state, the order and a copy of the judgment may be recorded in any other county of this state without further notice or proceedings, and shall be enforceable in the same manner as the judgment of a court of this state.

(7) A lien on real estate in any county shall be created only when there has been recorded in the official records of the county (a) a certified copy of the judgment, and (b) a copy of the clerk's certificate or the order recognizing the

>out-of-country foreign judgment. The priority of such lien will be established as of the time the latter of the two recordings has occurred.
>
>(8) A judgment lien on personal property is acquired only when a judgment lien certificate is filed in accordance with s. 55.203 with the Department of State.

FLA. STAT. § 55.604 (2013). "The purpose of the statute's filing and mailing requirements is to ensure that the judgment debtor receives notice that another is seeking to enforce a judgment against him in a Florida court and that the debtor is afforded an opportunity to voice any objections that he may have to such enforcement." *Frymer v. Brettschneider*, 696 So.2d 1266, 1268 (Fla. 4th Dist. Ct. App. 1997).

Under this statute, it is not the recording of a foreign country judgment with the register of deeds that creates a lien; rather, it is the recording of a judgment with the register of deeds ***along with*** the filing of the judgment with the clerk of court, notice and opportunity to object by the judgment-debtor, and in the event of an objection, a hearing by the court. In this case, the record reflects that although a copy of the Judgment, which was clearly marked as an "unofficial" copy, was recorded with the Broward County Register of Deeds in March 2005, an action to domesticate and/or enforce the Judgment was not filed with the Circuit Court for Broward County until July 2006, two months after the Alamas sold the Florida Property. More importantly, an Order finding that the Judgment was enforceable against the Defendant was not entered by the Broward County Circuit Court until December 2009, over three and one-half years after the Alamas sold their Broward County residence. In accordance with Florida law, the Judgment was therefore not enforceable until December 2009, and it was only at that time that the Judgment could have created a lien on any real property held by the Defendant in the State of Florida through the recording of a certified copy of

the Judgment along with the December 15, 2009 Order recognizing the Judgment. *See* FLA. STAT. § 55.604(7). Quoting the Sixth Circuit's holding in *Best*, the court finds the same analysis applies in this adversary proceeding:

> Steier, of course, had no such security interest. As an unsecured creditor, he had a legal right to try to collect on his judgment, but not to compel the Bests to pay him ahead of other creditors. *See Bukowski v. Patel*, 266 B.R. 838, 844 (E.D. Wis. 2001) (the term "'injury' means the violation of another's legal right or the infliction of an actionable wrong") (citation omitted). Other secured creditors had the same claim to the Bests' assets as Steier. Meanwhile, secured creditors had a *superior* claim, at least with regard to the property securing their loans to the Bests. *See In re Covington*, 176 B.R. 152, 154 (Bankr. E.D. Tenn. 1994) (under § 506(a), "a claim is secured . . . to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured") (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 239, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989)). Thus, the bankruptcy court did not err in concluding that the Bests did not invade Steier's legal rights by selling assets and using the proceeds to pay other creditors instead of paying him.

*Best*, 109 Fed. Appx. at 9.

Having found that there was no willful and malicious injury inflicted upon the Plaintiffs by the Defendant and that they are not entitled to a determination that the Judgment entered on May 6, 2004, in the High Court of Justice, Eastern Caribbean Supreme Court, Antigua and Barbuda, under 11 U.S.C. § 523(a)(6), the Complaint filed by the Plaintiffs on February 19, 2013, initiating this adversary proceeding, shall be dismissed. A Judgment consistent with this Memorandum will be entered.

FILED: October 29, 2013

                                        BY THE COURT

                                        */s/  RICHARD STAIR, JR.*

                                        RICHARD STAIR, JR.
                                        UNITED STATES BANKRUPTCY JUDGE